UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Codie Walker,

        Plaintiff

v.

Renee Baker & Jerry Howell,

        Defendants

Case No. 2:19-cv-02221-CDS-DJA

**Order Denying Plaintiff's Motion for Summary Judgment, Granting Defendants' Motion for Summary Judgment, and Closing Case**

[ECF Nos. 34, 36]

    Plaintiff Codie Walker brings this 42 U.S.C. § 1983 action against defendants Renee Baker and Jerry Howell for their alleged deliberate indifference to his serious medical needs and violation of his right to due process. Baker was the warden of Lovelock Correctional Center (LCC) and Howell the warden of Southern Desert Correctional Center (SDCC) when Walker was transferred from LCC to SDCC in the summer of 2018. Walker argues that he had a medical need for a barrier-free institution,[1] a term used to describe facilities with wheelchair ramps and minimal stairs or hills, but the defendants nonetheless kept him at SDCC for almost three years—in violation of the Eighth Amendment—before transferring him back to LCC in April 2021. He also argues that while at SDCC, he was held in administrative segregation in violation of his Fourteenth Amendment right to due process. But because the undisputed facts demonstrate that neither defendant personally participated in those actions, I grant the defendants summary judgment and deny Walker summary judgment on each of his claims. I instruct the Clerk of Court to enter judgment accordingly and to close this case.

---

[1] He calls this a "flat yard" restriction, but the defendants point out that the term is an informal designation and interchangeable with the medical classification known as a "barrier free restriction." ECF No. 36 at 11 n.3.

I.       Background

        Walker was first incarcerated in the Nevada Department of Corrections (NDOC) on December 12, 2012. ECF No. 36-1 at 7. He alternated amongst various NDOC institutions until he was classified with a medical restriction that required him to be housed at a barrier-free institution. *Id.* at 15. He was thus transferred to LCC in December 2017. *Id.* at 7. Baker was the warden of LCC at that time. *Id.* at 5. On June 22, 2018, a correctional officer discovered prison-made alcohol in Walker's cell. *Id.* at 100, 106. Walker admitted that it was his. *Id.* at 100. He also made derogatory remarks toward the officer and challenged him to a fight. *Id.* at 111. He "took a fighting stance towards [the officer,] squaring his shoulders in [the officer's] direction." *Id.* As soon as the officer called for backup, the situation deescalated. *Id.* Walker was moved to administrative segregation and charged with internal disciplinary measures for (1) assault and (2) possession and sale of intoxicants. *Id.* at 104, 110. The assault charge was dismissed, *id.* at 108, but Walker pled guilty to the intoxicants charge. *Id.* at 104. A few days later, on July 27, 2018, Walker's case worker reclassified Walker and noted that he was "no longer fit to be on LCC's yard due [to] threats against staff . . . and challenging [the] officer to a fight[.]" *Id.* at 25. She noted that LCC's medical staff removed the barrier-free restriction in Walker's file and recommended that he be transferred "to SDCC via NNCC [Northern Nevada Correctional Center] due to [the] threats against staff." *Id.* Walker was thus sent to NNCC the next day, where he was placed in administrative segregation for about two weeks. *Id.* He was placed in administrative segregation because of "CMS in GP," a shorthand indicating that he had issues with other inmates or staff at NNCC such that being placed in general population would pose a safety risk. *Id.*; ECF No. 36 at 4 n.2. Walker was transferred to SDCC on July 11, 2018. *Id.* at 8. He was placed in general population at SDCC. *Id.* at 25.

        On September 20, 2018, his case worker noted that the medical staff again placed a barrier-free yard restriction in Walker's file. *Id.* at 25. They noted that LCC lost its barrier-free yard status and that only one other NDOC prison, Ely State Prison, would be an option for

Walker. *Id.* Walker informally grieved his concern about being at SDCC through NDOC's grievance system and was at first denied a transfer. *Id.* at 37. He escalated his grievance, and Howell responded to inform him that after further review of his file, he was approved for LCC "pending available bed space." *Id.* at 34. But various circumstances—Walker's own disciplinary issues, *id.* at 28, 64, the requirement that he swap with an LCC inmate because of the bed shortage, *id.* at 62, and eventually the onset of the COVID-19 pandemic, *id.* at 75—prevented Walker from being transferred. Walker was placed in administrative segregation for the majority of this time due to a disciplinary investigation against him. *Id.* at 28, 64. Even after the investigation had concluded, NDOC staff determined that he could not return to general population for his own safety. *Id.* at 119. Walker grieved that determination and Howell again responded to his grievance, stating that circumstances "of which [Walker was] aware" prohibit[ed him] from safely cohabitating in general population." *Id.* at 116. Howell added that Walker's safety would not be compromised "simply because [he was] willing to sign a waiver to reenter the general population," and that Walker was approved for transfer back to LLC "as soon as possible after inmate transportation between NDOC institutions resumes" post-COVID. *Id.* Walker was finally moved back to LCC on April 7, 2021. *Id.* at 8.

      Walker now brings two claims against the two defendants: (1) an Eighth Amendment deliberate-indifference-to-medical-needs claim, and (2) a Fourteenth Amendment due process claim. Am. Compl., ECF No. 9 at 4–8. He and the defendants each move for summary judgment on both claims.

**II.**    **Legal standard**

      Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100,

1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

### III. Discussion

    *a. Baker is entitled to summary judgment on both of Walker's claims against her.*

Walker sues Baker under 42 U.S.C. § 1983, but the undisputed facts demonstrate that she was not personally involved in either his placement at a barrier-free institution (the basis for his deliberate-indifference claim), or his placement in administrative segregation (the basis for his due process claim). And a defendant may be liable under § 1983 only if they personally participated in the actions creating a constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official . . . is only liable for [their] own misconduct."). Simply put, a person cannot be held liable for a constitutional violation under § 1983 unless they were integral participants in the unlawful conduct. *Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018). A person "subjects" another to the deprivation of a constitutional right if they do "an affirmative act, participate[] in another's affirmative acts, or omits to perform an act which [they are] legally required to do that causes the deprivation of which complaint is made." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

First, Walker fails to demonstrate that Baker was involved in his transfer from LCC to SDCC. His only purported evidence of her personal participation is the allegation he makes in

his own complaint. ECF No. 42 at 16 (citing ECF No. 9). But in resisting a motion for summary judgment, a nonmoving party must "go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). Because there is no evidence demonstrating that Baker was personally involved in Walker's transfer, I deny Walker summary judgment and grant Baker summary judgment on the deliberate-indifference claim against her.

Second, Walker fails to demonstrate that Baker was involved in his placement in administrative segregation. Walker's motion for summary judgment and his opposition to the defendants' summary-judgment motion both indicate that he no longer intends to pursue his due-process claim against Baker. ECF Nos. 34 at 19 ("Plaintiff makes [the due-process] claim only against defendant Jerry Howell, warden at SDCC, for the time he was placed in administrative segregation . . . not Renee Baker."), 42 at 22 (same). While a party's non-opposition to a motion for summary judgment is not itself sufficient to grant summary judgment, *see* Fed. R. Civ. P. 56(a), my independent review of the evidence presented by both parties identifies no basis to hold Baker liable for Walker's placement in administrative segregation. Walker was in administrative segregation at LCC between June 22–27, 2018, but the defendants have demonstrated that such a placement occurred as a result of Walker possessing and/or selling alcohol from his prison cell and subsequently threatening to fight a correctional officer, that Walker went through the typical NDOC disciplinary process, and that Baker was not the person who approved the discipline. ECF No. 36-1 at 25, 98–111. Because there is no genuine dispute that Baker was uninvolved in Walker's placement in administrative segregation, I deny Walker summary judgment and grant Baker summary judgment on his Fourteenth Amendment claim against her.

      *b.   Howell is entitled to summary judgment on both of Walker's claims against him.*

      Walker brings a deliberate-indifference-to-medical-needs claim against Howell for his alleged role in keeping Walker at SDCC despite Walker's barrier-free restriction. To establish an Eighth Amendment violation for deliberate indifference, a plaintiff "must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (cleaned up). To satisfy the second prong, a plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and [] harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay[,] or intentionally interfere with medical treatment[.]" *Id.*

      Walker fails to establish any triable issues with respect to the subjective standard and thus cannot meet his burden at summary judgment. He identifies Howell's delay in transferring him back to LCC (or any other barrier-free institution) as the alleged failure to respond to his medical need, but he cannot demonstrate that Howell was responsible for transferring inmates or, even if he were, that he was harmed by the delay before his eventual transfer. There is no indication in the evidence before me that Walker suffered harm as a result of his delayed transfer to LCC. While Walker alleges in his complaint that his ailments required him to have a barrier-free restriction, ECF No. 9 at 4–5, he never alleges what harm resulted from his stay at SDCC. And he does not present any evidence creating a genuine dispute about whether he was, in fact, harmed. So because Walker cannot demonstrate that he was harmed, he cannot satisfy the subjective standard for an Eighth Amendment violation. I thus deny him summary judgment and grant Howell summary judgment on the deliberate indifference claim against Howell.

Walker also brings a due process claim against Howell for his alleged role in keeping Walker in administrative segregation while at SDCC. The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Inmates have the right to due process while incarcerated, but such a right "may be diminished by the needs and exigencies of the institutional environment." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). And the Due Process Clause does not create a liberty interest in a prisoner to be free from the "normal limits or range of custody [that his] conviction has authorized the [s]tate to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Generally, "the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate [due process] because there is no liberty interest in remaining in the general population." *Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995). However, if a prisoner establishes that his segregation is an atypical and significant hardship, he is entitled to notice of the reason for segregation, an informal review of the evidence against him, and periodic review of his placement. *Augborne v. Filson*, 2022 WL 3159322, at *3 (D. Nev. Aug. 8, 2022) (citing *Hewitt v. Helms*, 459 U.S. 460, 476–77 & n.9 (1983), *disapproved of in part on other grounds by Sandin*, 515 U.S. at 482–83). But typically, "administrative segregation in and of itself does not implicate a protected liberty interest[.]" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

In determining whether Walker's due-process rights were violated by his placement in administrative segregation, I must consider the extent of difference between segregation and general population, the duration and intensity of his confinement, and whether the sanction extended the length of his prison sentence. *Serrano*, 345 F.3d at 1078. Walker argues that the difference between his segregation and general population was great, as segregated inmates could not attend educational or religious services as often, could not use the phone on certain days, could not shower on certain days, received less yard time, were permitted to spend less money at the commissary, were not permitted to visit the cafeteria for meals, and had less

7

freedom of movement within the prison. ECF No. 42 at 10–11. He was in administrative segregation for a long time—596 days, by his count. *Id.* at 12. However, he does not allege that the sanction extended the length of his prison sentence. And he was given an initial due-process hearing on August 22, 2019—two days after he was initially placed in administrative segregation—as well as 16 additional periodic reviews between August 2019 and March 2021. ECF No. 36-1 at 30–32.

While Walker has demonstrated genuine disputes as to whether his administrative segregation comported with due process, he does not demonstrate that Howell was personally involved in any of the decisions to segregate him or keep him segregated. The extent of Howell's involvement in those decisions comes from Howell's response to one of Walker's grievances, wherein Howell states that SDCC investigators determined that "current circumstances . . . prohibit you from safely cohabitating in general population at this institution . . . [y]ou have been submitted and approved for transfer to [LCC] and will be transferred as soon as possible after inmate transportation between NDOC institutions resumes." ECF No. 36-1 at 116. But as other judges in this district have found, "[a]ctions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action." *Jordan v. Veal*, 2009 WL 607414, at *4 (E.D. Cal. Mar. 9, 2009) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Gates v. LeGrand*, 2020 WL 3867200, at *5 (D. Nev. Mar. 27, 2020) *report & recommendation adopted*, 2020 WL 1890540 (D. Nev. Apr. 16, 2020) ("Where the defendant's only involvement in the allegedly unconstitutional conduct is the 'denial of administrative grievances or the failure to act, the defendant cannot be liable under [§] 1983.'"). While these decisions are not binding, I find their reasoning persuasive and adopt it here. As a result, I deny Walker summary judgment and grant Howell summary judgment on Walker's due-process claim.

## IV.  Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Walker's motion for summary judgment **[ECF No. 34] is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 36] is GRANTED**. The Clerk of Court is directed to enter judgment accordingly and CLOSE THIS CASE.

DATED: July 24, 2023

_____
Cristina D. Silva
United States District Judge